UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America,** | |
| **v.** | **Case No. 21-cr-028 (APM)** |
| **Jessica Watkins,** | |
| **Defendant.** | |

MEMORANDUM IN SUPPORT OF RELEASE

Jessica Watkins**,** through counsel, respectfully files supplement to her request for release on bail, subject to conditions as the Court deems appropriate.

**Legal Standard**

The Supreme Court has made clear that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States. v. Salerno*, 481 U.S. 739, 755 (1987).  That is why "[t]here can be no doubt that this Act *clearly favors nondetention.*" *United States. v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) (emphasis added).  Instead, the Bail Reform Act requires the Court to impose the "least restrictive" means of ensuring the appearance of the person and safety to the community.  18 U.S.C. § 3142(c)(1)(B).  Only in "*rare* circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 118, 1121 (9th Cir. 1991) (emphasis added); *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("The default position of the law, therefore, is that a defendant should be released pending trial.").

When Congress passed the Bail Reform Act ("BRA"), it was looking to detain fewer people pretrial, not more.  Congress knew that federal charges are serious, that mandatory

minimums are frequently asserted, and that sentencing exposure is enormous for most individuals accused in the federal system—yet, it still crafted a law acknowledging that detention is *only* appropriate for that "*small but identifiable group of particularly dangerous defendants.*" *United States v. Singleton*, 182 F. 3d 7, 13 (D.C. Cir. 1999) (emphasis added) (quoting S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189, 1983 WL 25404, at *3189).

To further this goal, Congress restricted the government's ability to request detention. Specifically, the BRA provides that the government may request a bail hearing **only if** certain conditions in § 3142 are present—*e.g.*, the defendant is charged with a crime of violence, faces a life sentence, death, or a drug offense with a 10-year or greater penalty, or poses a "serious risk" that he will "flee" or "obstruct justice." *See* 18 U.S.C. § 3142(f)(1)–(2).

If none of the conditions are met, then "a pretrial detention hearing **may not be held**, and the defendant must be released pending trial under the conditions set forth in § 3142(a)." *United States v. Tadlock*, 399 F. Supp. 2d 747, 750 (S.D. Miss. 2005) (citing *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992); *Singleton*, 182 F.3d at 9 ("Absent of these circumstances, detention is not an option."); *United States v. Ploof*, 851 F.2d 7, 9–10 (1st Cir. 1988) ("3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such a hearing to the [six circumstances listed in § 3242(f)]").

Importantly, the Bail Reform Act does not permit the government to request a bail hearing on dangerousness alone—and courts may not detain defendants on dangerousness alone. *United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) ("We are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness.  This interpretation of the Act would render meaningless 18 U.S.C. § 3142(f)(1)

and (2). Our interpretation is in accord with our sister circuits who have ruled on this issue.").

Indeed, the Government must first establish one of the grounds in § 3142(f) "*as a prerequisite* to

the court considering the factor of danger . . . ." Office of the United States Attorneys, *Criminal

Resource Manual: Release and Detention Pending Judicial Proceedings*;[1] *see also Ploof*, 851

F.2d at 11 ("We believe, however, the structure of the statute and its legislative history make it

clear that Congress did not intend to authorize preventive detention unless the judicial officer

first finds that one of the § 3142(f) conditions for holding a detention hearing exists.") (citations

omitted).

### Argument

In this case, the government cannot satisfy any of the conditions set forth in § 3142(f) to

request a detention hearing.  Ms. Watkins is charged by indictment with four counts:

1) conspiracy, in violation of 18 U.S.C. § 371; 2) obstruction of an official proceeding, in

violation of 18 U.S.C. § 1512(c)(2); 3) destruction of government property, in violation of 18

U.S.C. § 1361; and 4) entering and remaining in a restricted building or grounds, in violation of

18 U.S.C. § 1752(a)(1).  *See* Indictment, ECF No. 3.

The only provision under § 3142(f) that could arguably authorize a detention hearing in

this case is § 3142(f)(1)(A), which allows for a detention hearing in cases that involves 1) a

"crime of violence" or 2) "an offense listed in section 2332(b)(g)(5)(B) for which a maximum

term of imprisonment of 10 years or more is prescribed."[2]  For reasons discussed below, none of

---

[1] Available at https://www.justice.gov/usam/criminal-resource-manual-26-release-and-detention-pending-judicial-proceedings-18-usc-3141-et (last visited Feb. 23, 2021).

[2] The only other plausible provision the government could rely upon is § 3142(f)(2)(A), which authorizes a detention hearing in a case that involves "a *serious* risk that such person will flee." *Id.* (emphasis added).  Many arguments related to flight risk have already been addressed in Ms. Watkins's prior filings, *see* ECF Nos. 26-27, and will not be repeated again here.  Moreover, the Court has already indicated it does not view Ms. Watkins as a serious risk of flight. *See*

the charges against Ms. Watkins satisfy § 3142(f)(1)(A).  And because of this, Ms. Watkins

must be released pending trial under the conditions set forth in § 3142(a).

### A.  § 3142(f)(1)(A) is inapplicable because the alleged § 1361 violation is not a "crime of violence."

While § 3142(f)(1)(A) permits the government to request detention in a case that

involves a "crime of violence," Ms. Watkins is not charged with a crime of violence.  A "crime

of violence," means—

(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another **[known as the "elements clause"]**; or

(B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense **[known as the "residual clause"].**

18 U.S.C. 3156(a)(4)(A).

When interpreting similarly worded statutes defining a "crime of violence," the Supreme

Court has repeatedly held that the residual clause is unconstitutionally vague.  *See, e.g.*, *United*

*States v. Davis*, 139 S. Ct. 2319 (2019) (invalidating the residual clause in 18 U.S.C. § 924(c)).

Accordingly, the residual clause cannot be relied on to determine whether the alleged § 1361

violation qualifies as a "crime of violence."[3]  The only question, then, is whether § 1361 "has as

an element of the offense the use, attempted use, or threatened use of physical force against the

person or property of another?"  It does not.

---

Transcript, ECF No. 35 at 13 ("And I'll just tell you right now: I don't buy that Ms. Watkins meets the definition of 'serious risk of flight.'").

[3] At the hearing, the government cited to *United States v. Wisecarver*, No. 08-cr-50087, 2009 WL 10696988 (D.S.D. 2009) to argue that prior cases have held § 1361 qualifies as a crime of violence.  This case is not persuasive because its reasoning was based entirely on the defunct residual clause.  *See id.* at *1 ("The Court believes that destruction of government property is an offense that 'by its nature, involves a substantial risk that the physical force against the … property of another may be used in the course of committing the offense.'").

Section 1361 provides "Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses" is guilty of depredation of government property.  *See* 18 U.S.C. § 1361.

The term "depredation" is not defined in the statute, but Black's Law dictionary defines it as "[a]n act of taking or destroying something; esp. a plundering and pillaging."  Black's Law Dictionary (11th ed. 2019) ("depredation") (emphasis added).  There are myriad ways in which one could take government property without using force (e.g., taking government property from an empty office building), and there are many ways in which someone could destroy government property without using force (e.g., spilling wine on the carpet or spraying graffiti on property).

Indeed, case law provides multiple examples of non-violent § 1361 convictions.  *See, e.g.*, *United States v. Mastropierro*, 931 F.2d 905 (D.C. Cir. 1991) (§ 1361 conviction for "defacing the United States Capitol with human blood to protest the condition of the homeless"); *United States v. Frankel*, 739 F. Supp. 629 (D.D.C. 1990) (throwing blood on the United States Capitol building); *Liteky v. United States*, 510 U.S. 540 (1994) ("spilling of human blood on walls and various objects, at the Fort Benning Military Reservation"); *Edwards v. United States*, 361 F.2d 732 (8th Cir. 1966) (taking a medicine cabinet, a face bowl, and lead pipe from a vacant home); *United States v. Martin*, 251 F. App'x 979, 980 (6th Cir. 2007) ("'swinging wooden doors separating the spectators from participants' in a federal courtroom and causing damage"); *United States v. Donner*, 497 F.2d 184 (7th Cir. 1974) (damaging secret service records through spray paint and other means); *United States v. Randall*, 435 F. App'x 707, 708

(9th Cir. 2011) (cutting two maple trees from the Olympic National Forest); *United States v. Rebich*, 85 F. 3d 639 (9th Cir. 1996) (stealing a deer head); *United States v. Barringer*, 248 F. App'x 754, 755 (7th Cir. 2007) (scratching "USM" on a government vehicle).  At this very moment, the government is prosecuting an individual in this Court under § 1361 for "applying spray paint to a granite wall on the Lincoln Memorial property."  *See* Indictment in *United States v. Avery*, 20-cr-109-ABJ, ECF No. 11 (D.D.C. July 14, 2020).

The Supreme Court has repeatedly instructed that in construing these types of statutes, "we cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'  The ordinary meaning of this term . . . suggests a category of violent, active crimes[.]"  *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004).  No one could credibly suggest that taking government property from a vacant building, closing a door too hard, or spray painting a government building are ordinarily understood as "violent."  *See United States v. Bowen*, 936 F.3d 1091, 1104 (10th Cir. 2019) ("And we easily conclude that the act of spray-painting another's car does not entail the use of violent force.").  Because of that, § 1361 is not a crime of violence.

**B.  § 3142(f)(1)(A) is inapplicable because the alleged § 1361 violation does not qualify as an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed.**

Section § 3142(f)(1)(A) also authorizes a detention hearing in a case that involves "an offense listed in section 2332(b)(g)(5)(B) *for which a maximum term of imprisonment of 10 years or more is prescribed*."  *Id.* (emphasis added).  In other words, it is simply not enough to be an offense listed under § 2332(b)(g)(5)(B), it must also have a penalty of "10 years or more."

In this case, § 2332(b)(g)(5)(B) lists a violation of § 1361 as an enumerated offense. However, the penalty associated with § 1361 is "*not more than one year*" if the damage or attempted damage is $1,000 or less, and "*not more than ten years*" if the damage or attempted damage is more than $1,000.  *See* § 1361 (emphasis added).

The government's position is that since there is a one-day overlap between "10 years or more" and "not more than ten years"—i.e., exactly 10 years—this case is eligible for a detention hearing under § 3142(f)(1)(A).  Ms. Watkins respectfully disagrees.

As a preliminary matter, using a one-day overlap to justify detention under § 3142(f)(1)(A) does not seem to effectuate Congress's intent that pretrial detention be limited to "a subset of defendants charged with crimes that are '***the most serious***' compared to other federal offenses." *Singleton*, 182 F. 3d 7, 13 (D.C. Cir. 1999) (quoting *Salerno*, 481 U.S. at 747) (emphasis added).  Section 1361 has a sentencing exposure of 10 years or less; section 3142(f)(1)(A) only authorizes detention hearings with a sentencing exposure of 10 years or more—i.e., only for the most serious crimes.  Simply because § 1361's potential sentencing exposure overlaps one-day with the most serious crimes, does not mean § 1361 is itself one of the most serious crimes—indeed, it shows the opposite.

Moreover, Congress made clear that "[n]othing in [the BRA] shall be construed as modifying or limiting the presumption of innocence," § 3142(j), and yet, the government's interpretation does just that.  Under the government's view, Ms. Watkins would be eligible under § 3142(f)(1)(A) by just one day.  The problem, though, is that finding she is barely eligible under § 3142(f)(1)(A) would necessarily trigger a rebuttable presumption in favor of detention under 3142(e)(3)(C), because both findings are based on the enumerated clause of § 2332b(g)(5)(B).  Thus, the governments' interpretation leads to the following absurdity:

Ms. Watkins goes from being just barely eligible to have a detention hearing in the first place, to simultaneously being subject to a rebuttable presumption of detention.  Both Congressional intent and common sense suggest that there should be some daylight between the two.

Congress intended for the presumption under § 3142(e) to be limited to an even smaller subset of defendants than those charged with the most serious crimes.  That is, the presumption was meant to apply to defendants charged with only the most serious of the most serious crimes—crimes that are categorically "so strongly suggestive of a person's willingness or inclination to resort to criminal violence as to warrant the inference that the person would be a danger to society even if released on the most restrictive conditions."  S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, *reprinted in* U.S. Code Cong. & Ad. News 3189, 1983 WL 25404, at *3202.  As discussed above, people are frequently charged under § 1361 for spray painting graffiti or defacing property—i.e., offenses that do not suggest the individual will categorically pose a danger to society if released under the most stringent conditions.  The government's interpretation is thus at odds with Congressional intent.  And the "[i]nterpretative uncertainty must be resolved in light of the foregoing Congressional intent."  *Singleton*, 182 F.3d at 13.

For the above reasons, this Court should find that an offense under § 1361 does not trigger eligibility for a detention hearing in this case under § 3142(f)(1)(A)—or a rebuttable presumption under § 3142(e)(3)(C) at the same time.  If there are any doubts, the rule of lenity, which "requires ambiguous laws to be interpreted in favor of the defendants subject to them," provides this Court with additional support for finding that § 3142(f)(1)(A) is inapplicable here. *See United States v. Santos*, 553 U.S. 507, 514 (2008); *see also United States v. Davis*, 139 S. Ct. 2319, 2333 (2019) ("Employing the canon as the government wishes would also sit uneasily with the rule of lenity's teaching that ambiguities about the breadth of a criminal statute should

8

be resolved in the defendant's favor."); *Singleton*, 182 F.3d at 13 ("Interpretative uncertainty [in the BRA context] must be resolved in light of the foregoing understanding of Congressional intent.").

### C.  The government cannot meet its burden of proving that Ms. Watkins poses a *serious* flight risk under § 3142(f)(2)(A) for a simple reason: she doesn't.

Finally, the government seeks detention under § 3142(f)(2)(A) "for risk of flight, given defendant's lack of ties to the community."  Gov't Mem., ECF No. 4 at 6.  While the Court has already signaled it does not view Ms. Watkins as a serious risk of flight counsel offers the following in case the government still intends to pursue this avenue.  Under § 3142(f)(2)(A), ordinary risk of flight is not a permissible basis for detention; rather, the statute only authorizes detention if there is a "*serious risk*" that Ms. Watkins will flee." § 3142(f)(2)(A) (emphasis added).  And the government bears the burden of presenting some *evidence* to substantiate its allegation that a defendant poses a serious flight risk, a burden the government has not—and cannot—meet.  *See United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986) (A defendant "may be detained *only if the record supports* a finding that he presents a serious flight risk" (emphasis added)).

Although the defense bears no burden of proof, it is clear from Ms. Watkins's history and characteristics that she does not pose a serious risk of flight.  She has no prior convictions.  She has no history of non-compliance.  And there is no indication that she has ever sought to flee from any court proceeding.  *See United States v. Cruz*, 363 F. Supp. 2d 40, 47 (D.P.R. 2005) (denying the Government's motion to detain a person who frequently traveled internationally, had two passports and other fraudulent documents in his possession, and faced an advisory sentence of 33-41 months imprisonment where the "vast majority of [his] family, economic and social ties are in this jurisdiction" and "the government has presented no concrete evidence to the

effect that defendant was fleeing the jurisdiction, or was taking affirmative steps to do so. . . .").

Indeed, as noted in our prior pleading, Ms. Watkins turned herself in.

The BRA's legislative history makes clear that detention based on serious flight risk is

only appropriate under "extreme and unusual circumstances."[4]  For example, the case relied on

in the legislative history as extreme and unusual enough to justify detention on the grounds of

serious risk of flight involved a defendant who was a fugitive and serial impersonator, had failed

to appear in the past, and had recently transferred over a million dollars to Bermuda.  *See*

*Abrahams*, 575 F.2d at 4.  The government can come nowhere close to demonstrating that

Ms. Watkins's risk of flight rises to a similar extreme or unusual level.

In addition, a defendant should not be detained as a "serious risk" of flight when the risk

of non-appearance can be mitigated by conditions of release.  The only defendants who qualify

for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the

government can prove are likely to flee the jurisdiction with the intention of thwarting the

judicial process.  *See, e.g.*, Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724

(2017).

---

[4] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983)
("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney
for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose
[types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current
case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis
added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a
"*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as
representing the "current case law"; *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir.
1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release
except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th
Cir. 1976) (holding that bail can only be denied "in the exceptional case").

There is no other basis to detain Ms. Watkins in this case.  Because there is no basis to detain Ms. Watkins under § 3142(f), she should be released immediately under whatever conditions the Court deems appropriate.

Respectfully submitted,

A.J. KRAMER
Federal Public Defender

_____/s/_____
Michelle Peterson
Chief Assistant Federal Public Defender
Federal Public Defender's Office
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500