UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 21-CR-28 (APM) |
| : | |
| **JESSICA WATKINS,** : | |
| : | |
| **Defendant.** : | |
| _____ : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM
## IN SUPPORT OF PRE-TRIAL DETENTION

The United States files this Supplemental Memorandum in Support of Pre-Trial Detention to address the Court's questions concerning how the Bail Reform Act's pretrial detention provisions under 18 U.S.C. § 3142 apply to a felony charge of destroying government property under 18 U.S.C. § 1361. This pleading is intended to clarify the Government's position, which is:

First, as elaborated below, a felony § 1361 offense triggers a rebuttable presumption of detention under § 3142(e)(3)(C), because it is an offense listed in 18 U.S.C. § 2332b(g)(5)(B) and is punishable by a term of imprisonment of up to 10 years, which falls within the statutory requirement that the predicate offense provide for punishment of "10 or more years." Because the grand jury found probable cause that the defendant committed a felony violation of § 1361, the rebuttable presumption applies here.

Second, because the rebuttable presumption applies, a detention hearing should necessarily follow to provide the defendant an opportunity to rebut the presumption and, if successful, for the Court to balance § 3142(g) factors in determining whether detention is necessary. That being the case, whether § 1361 is a crime of violence is immaterial to the question of whether a hearing is necessary and whether the offense is detention-eligible. The Court therefore need not reach the

question of whether § 1361 is a crime of violence. *See United States v. Rachel Marie Powell*, No. 21-cr-197 (CJ. Howell, February 11, 2021) (applying the rebuttable presumption to a § 1361 charge arising from the Capitol riots without reaching the question of whether the offense is a crime of violence). But in any event, a § 1361 violation *is* a crime of violence, because a "depredation" committed against property, an essential element of the offense, necessitates the use of force.

## BACKGROUND

Video recorded on January 6, 2021, captured the defendant among a "stack" of more than a dozen individuals dressed in camouflaged para-military gear moving in a deliberate and organized manner toward the Capitol building. An additional recording shows the stack moments later embedded near the front of a violent mob that is attempting to break a Capitol building door. The video depicts the doors later opening and the subsequent flow of people into the building, to include the defendant and members of the stack. Selfies taken inside of the Capitol rotunda by the defendant and her co-conspirators posted on social media platforms further evince their presence inside. In these and other posts, the defendant characterized their insurgent effort to breach the Capitol building as "forcing entry into the Capitol building" and that it was "[f]orced. Like Rugby." The resulting damage to the door is estimated to be in excess of $1,000.

On these and other facts, the defendant, along with co-defendants Thomas Caldwell and Donovan Crowl, were charged on January 19, 2021, by criminal complaint with violations of 18 U.S.C. §§ 371 (Conspiracy); 372 (Conspiracy to Impede or Injure Officer Without Lawful Authority); 1361 (Destruction of Government Property); 1512(c)(2) (Obstruction of an Official Proceeding); 1752(a) (Restricted Building or Grounds); and, 40 U.S.C. § 5104(e)(2) (Violent Entry and Disorderly Conduct on Capitol Grounds). An arrest warrant issued for the defendant was

executed that same day in Ohio whereupon she elected to hold her detention hearing in Washington, D.C.

On January 27, 2021, a federal grand jury returned a four count indictment charging the defendant, Caldwell, and Crowl with violations of 18 U.S.C. §§ 371 (Conspiracy); 1512(c)(2) (Obstruction of an Official Proceeding); 1361, 2 (Aiding and Abetting in the Destruction of Government Property); and, 1752(a) (Restricted Building or Grounds). At her initial appearance in Washington, D.C., on February 12, 2021, the defendant was ordered detained pending a detention hearing that was scheduled for February 23, 2021. In the interim, on February 19, 2021, a federal grand jury returned a superseding indictment charging the defendant with the same four counts as before in addition to eight co-conspirators to include Caldwell and Crowl as well as Sandra Parker, Bennie Parker, Kelly Meggs, Connie Meggs, Graydon Young, and Laura Steele.

At the detention hearing on February 23, 2021, this Court requested that the parties brief several issues regarding the interplay between offenses that trigger rebuttal presumptions for detention under § 3142(e)(3)(C) and those that provide for a detention hearing outlined under § 3142(f). Three specific questions were posed for the parties to address:

1) Whether a violation of § 1361 is a predicate offense that entails a rebuttable presumption under § 2332b(g)(5)(B), where the maximum term of imprisonment under § 1361 is "not more than 10 years" and § 2332b(g)(5)(B) minimally requires that the offense is punishable by a term of "10 years or more";

2) Whether the Court must first, as a threshold matter, determine if the defendant has been charged with an offense that would warrant a detention hearing under § 3142(f) before even assessing the applicability of a rebuttable presumption under § 3142(e)(3)(C);

3) Whether the "depredation" committed against property, as required to prove § 1361, categorically requires the use of force such that it qualifies as a "crime of violence" under 18 U.S.C. § 3156(a)(4)(A) for determining if a detention hearing is available under § 3142(f)(1)(A).

## ARGUMENT

I. § 1361 Triggers a Rebuttable Presumption in Favor of Detention Under § 3142(e)(3)(C).

The statute defining the defendant's predicate offense at issue, 18 U.S.C. § 1361, states:

> Whoever willfully injures or commits any depredation against any property of the United States, or of any department or agency thereof, or any property which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished as follows:
>
> If the damage or attempted damage to such property exceed the sum of $1,000, by a fine under this title or imprisonment for not more than ten years, or both; if the damage to such property does not exceed the sum of $1,000, by a fine under this title or by imprisonment for not more than one year, or both.

The statutory provision governing application of rebuttable presumptions in detention considerations, 18 U.S.C. § 3142(e)(3)(C), states:

> (3) Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> . . .
>
> (C) an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> . . .

In relevant part, § 3142(e)(3)(C) requires (1) a finding of probable cause that the predicate offense committed is (2) listed under § 2332(b)(g)(5)(B), and (3) punishable by 10 years or more. Section 1361 satisfies these requirements. First, this Court "may rely on the a grand jury

4

indictment to establish probable cause for the purposes of triggering the rebuttable presumption" in § 3142(e)(3). *United States v. Williams,* 903 F.2d 844, 844 (D.C.Cir.1990). Second, § 1361 is clearly an offense listed under § 2332b(g)(5)(B). Finally, it is a crime punishable by "not more than 10 years." Even if for only one day, the maximum prison term for § 1361 of "not more than 10 years" certainly falls within an imprisonment range of "10 years *or* more." (emphasis added). *See United States v. Rasco*, 123 F.3 222, 227 (5th Cir. 1997) (finding a one day overlap sufficient to deem a state aggravated battery offense, punishable by "not more than 10 years," a "serious violent felony" under the Violent Crime Control and Law Enforcement Act, 18 U.S.C. § 3559(c), which included offenses "punishable by a maximum term of imprisonment of 10 years or more").

A rebuttable presumption in favor of detention under § 3142(e)(3)(C), therefore, applies in this case where there is probable cause that the defendant violated § 1361—an enumerated offense under § 2332b(g)(5)(B) punishable by ten or more years.

II. A Rebuttable Presumption Found Under § 3142(e)(3)(C) Obviates The Need for Judicial Inquiry Under § 3142(f).

Chief Judge Howell recently ruled that a rebuttable presumption applied in the context of § 1361 for purposes of detention. *Powell*, No. 21-cr-197, Tr. 11, ln 21-22. In *Powell*, which also arose from the January 6, 2021, Capitol assault, the Court assessed the statutory interplay between the rebuttable presumption provision under § 3142(e)(3)(C) and the availability of a detention hearing under § 3142(f)(1)(A). After finding that a rebuttable presumption applied, Chief Judge Howell explained,

> Once the presumption is triggered it imposes on the defendant, at a minimum, a burden of production to offer some credible evidence that rebuts it. Importantly, the burden of persuasion remains with the Government throughout. In assessing whether a defendant has successfully rebutted the presumption, the Court must take into account the available information concerning the four factors set out in 18 U.S.C. Section 3142(g).

(Tr. at 43, 16-19). Notably, the Court did not analyze if a detention hearing was available under § 3142(f), including whether § 1361 qualified as a crime of violence.

This approach is axiomatic given the burden shift to the defendant that would necessitate a hearing to rebut the presumption. The question of whether a detention hearing is necessary under § 3142(f), therefore, need not be reached where a rebuttable presumption arises, as will always be the case where, like this one, there is a probable cause finding that a defendant violated § 1361 while causing damage in excess of $1,000.

The court of appeals' decision in *United States v. Singleton*, 182 F.3d 7 (D.C. Cir. 1999), does not alter this straightforward analysis. In *Singleton*, the D.C. Circuit considered whether a felon-in-possession offense (in violation of 18 U.S.C. § 922(g)) qualified as a "crime of violence" under § 3142(f)(1)(A) so as to "trigger[] a detention hearing," *Id.* at 9, and ultimately concluded that, because § 922(g) was not categorically a "crime of violence," the government had not established a "right to a detention hearing under § 3142(f)(1)," *Id.* at 16. *Singleton* did not address—and indeed nowhere discussed—the issue now before this Court: whether the government must independently satisfy a factor in § 3142(f) to trigger a detention hearing when there exists probable cause to believe that the defendant committed an offense that gives rise to the rebuttable presumption under § 3142(e)(3). The answer—consistent with both Chief Judge Howell's recent conclusion and other decisions from this Court—is no. *See, e.g.*, *United States v. Taylor*, 289 F.Supp.3d 55, 63-64 (D.D.C. 2018) (finding the charged offenses "trigger[ed] the presumption," and then considering whether detention was appropriate under § 3142(g) without separately analyzing whether a detention hearing was warranted under § 3142(f); *United States v.*

6

*Hunt*, 240 F. Supp.3d 128, 133-34 (D.D.C. 2017) (same); *United States v. Muschetta*, 118 F.Supp.3d 340, 343-44 (D.D.C. 2015) (same).[1]

III.  § 1361 Qualifies as a Crime of Violence under § 3156(a)(4)(A) where the "Depredation" of Property necessarily entails the use of force.

Nevertheless, in non-presumption scenarios involving a misdemeanor violation of § 1361 where the damage is less than $1,000, or where the Court has otherwise not found sufficient probable cause to believe the offense was committed, a detention hearing is still available under § 3142(f)(1)(A) where it is a "a case that involves a crime of violence."[2]

As relevant here, a "crime of violence" under § 3156(a)(4)(A), the "elements clause," is "an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." A defendant may commit or aid and abet the commission of a crime of violence. *See, e.g.*, *United States v. Richardson*, 948 F.3d 733, 741-42 (6th Cir. 2020) (finding "no distinction" between aiding and abetting and committing the substantive crime, and concluding that a defendant's conviction for aiding and abetting Hobbs Act robbery "satisfies the elements clause"); *Steiner v. United States*, 940 F.3d 1282, 1293 (11th Cir. 2019).

---

[1] Even if this Court were to conclude that the government must independently establish a basis for detention under § 3142(f) where (as here) the defendant is charged with committing an offense that triggers the rebuttable presumption under § 3142(e)(3), the same offense that triggers the presumption—a felony violation of § 1361—also triggers a detention hearing. *See* § 3142(f)(1)(A) (noting that a detention hearing is warranted where the case involves "an offense listed in section 2332b(g)(5)(B)" with a statutory maximum of "10 years or more"); *supra*, at 4-5 (explaining why § 1361 as charged in this case satisfies that definition).

[2] The government submits that detention is also warranted under § 3142(f)(2)(A), as previously argued (*see* ECF 15 at 18 and ECF 30 at 4), as well as under § 3142(f)(2)(B), which for purposes of this case and those involving co-defendants similarly charged with a conspiracy to obstruct a congressional proceeding, in violation of 18 U.S.C. §§ 371, 1512(c)(2), applies where the brazen attempt to obstruct a congressional proceeding evinces a serious risk of obstructive conduct in the underlying criminal investigation.

Focusing on this Court's inquiry as to whether the second prong of § 1361—committing a depredation against property of the United States—requires the use of force,[3] the Supreme Court in *Johnson v. United States*, 559 U.S. 133 (2010), held that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. For that reason, the force inherent in common-law-battery, which could include "the merest touch," was not sufficient. *Id.* at 143. In *Stokeling v. United States*, 139 S. Ct. 544 (2019), the Supreme Court returned to the meaning of "violence force" and held that the force required to commit common-law robbery satisfies *Johnson's* definition. That is because the force necessary to effectuate a robbery "must overpower a victim's will" and is thus "capable of causing physical pain or injury." (quoting *Johnson*, 559 U.S. at 140). *Stokeling* expressly rejected the argument that "physical force" means "force that is 'reasonably expected to cause pain or injury.'" *Id.* at 554. Instead, it concluded that "*Johnson* . . . does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Id.*

Furthermore, the Sixth Circuit has explained, a "depredation" under § 1361 is "the act or an instance of robbing, plundering, or laying waste." *United States v. Jenkins*, 554 F.2d 783, 8786 (6th Cir. 1977). The Sixth Circuit adapted this definition from *Deal v. United States*, 274 U.S. 277 (1927), which interpreted the meaning of "depredation in a post-office regulation. In doing so, the Supreme Court defined "depredation" to mean "the act of plundering; a robbing; a pillaging." *Id.* at 283 (quoting Century Dictionary).

---

[3] The first prong that contemplates a violation that "willfully injures" property has been held to necessarily require the use or threatened use of force under the reasoning in *United States v. Abu Khatallah*, 316 F.Supp.3d 207, 213-15 (D.D.C. 2018)

Insofar as criminal statutes are interpreted in light of "the ordinary meaning of [a] term . . . at the time Congress enacted the statutes," *Perrin v. United States*, 444 U.S. 37, 42 (1979), it is significant that Congress added the "willfully injure" and "commit any depredation" language to § 1361's predecessor statute in 1934.  *See* Act of June 18, 1934, Pub. L. No. 73-394, 48 Stat. 996. At this time, "depredation" was understood to have the same meaning adopted by the Supreme Court in *Deal*.  *See* Black's Law Dictionary (3d ed. 1933) (defining "depredation' as "[t]he act of plundering, robbing, or pillaging" (citing *Deal*).

The three means of committing a depredation—robbing, plundering, and pillaging—all require the use of force.  Depredation-as-robbery involves the use or threatened use of physical force as the Supreme Court found in *Stokeling*.  In the context of "threats of injury to tangible and intangible property," the Fourth Circuit in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) held that such threats charged in a Hobbs Act robbery satisfied § 924(c)'s force clause.

With respect to pillaging and plundering, the 1933 edition of *Black's Law Dictionary*, which was in circulation when Congress first criminalized depredation against government property, defines the terms this way:

> **Pillage**:   Plunder; the forcible taking of private property by an invading or conquering army from the enemy's subjects;
>
> **Plunder**:  The most common meaning of the term "to plunder" is to take property from persons or places by open force, and this may be in course of a lawful war, or by unlawful hostility, as in the case of pirates or banditti.  But in another and very common meaning, though in some degree figurative, it is used to express the idea of taking property from a person or place, without just right, but not expressing the nature or quality of the wrong done.

Pillaging therefore qualifies as an elements-clause crime because it involves "the forcible taking of property."  The first definition of plundering, taking property "by open force," qualifies as well.

That leaves the second definition of plunder—"taking property form a person or place,

9

without just right." To the degree that depredation might be understood to encompass non-forceful thefts, § 1361's plain language and legislative history make clear that is not how Congress was using the term in that statute. Section 1361 requires that a person "commit[ ] any depredation *against any property*," thus by its terms requiring force to be used against property, which does not occur in a non-forceful theft. Similarly, § 1361 sets the statutory penalties by focusing on injury to property, raising the statutory-maximum penalty to 10 years "[i]f the damage or attempted damage to such property exceeds the sum of $1,000[.]" Thus, Congress was evidently contemplating that, whether a person "injure[d]" or "commit[ted] any depredation against" government property, some damage or attempted damage would occur. Had Congress meant to encompass non-forceful thefts within § 1361, it would have worded the statute differently to cover depredation "involving" property and to address "value" rather than damage. *See* 18 U.S.C. § 641 (criminalizing, *inter alia*, theft of government property, and setting statuary penalties based upon "the value of such property").

Section 1361's history likewise shows that Congress did not mean to cover non-forceful thefts. Before Congress added "or shall willfully injure or commit any depredation against" to what was then § 35, that statute already made it a crime to "take and carry away or take for his own use, or for the use of another, with intent to steal or purloin, any personal property of the United States[.]" 40 Stat. 1015, 1016 (1918). In 1934, Congress added "or shall willfully injure or commit any depredation against" to that Section, making it a crime to "take and carry away or take for his own use, or for the use of another, with intent to steal or purloin, or shall willfully injure or commit any depredation against, any property of the United States[.]" 48 Stat. 996, 996 (1934). Had Congress envisioned non-forceful thefts when it made this change, its use of "depredation" would have been redundant of the statutory language that already covered "tak[ing]

10

and carry[ing] away" property. And the fact that the "commit any depredation against" language was added at the same time as the "willfully injure" language, suggests that Congress was instead contemplating forceful thefts of the kind covered by depredation's typical meaning. *See, e.g., Smith v. United States*, 508 U.S. 223, 228, 229 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning. . . . Language, of course, cannot be interpreted apart from context. The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it.").

To commit a depredation against government property by plundering it, robbing it, or pillaging it, will thus necessarily involve a defendant's use of force. This was the conclusion reached by the Ninth Circuit, which in the context of piracy offenses, has expressly held that all three species of depredation—plundering, robbing, and pillaging—"require the use of force." *United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008) (discussing piracy under 18 U.S.C. § 2280 by reference to *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 161 (1820), which defined piracy as "robbery, or forcible depredations upon the sea"); *see also United States v. Dire* 680 F. 3d 446, 452-59 (4th Cir. 2012) (discussing the history of piracy-as-depredation).

To give one especially colorful example, the Ninth Circuit once held that a defendant committed a depredation against federal property when, after shooting a deer on the National bison Range, he "returned under cover of darkness, climbed the Range's eight-foot-high boundary fence, severed the deer's head, dragged it over the fence and to the road, loaded it in his truck, and drove home." *United States v. Rebich*, No. 95-30177, 1996 WL 252679, at *1 (9th Cir. May 8, 1996) ("These acts, no less than the actual shooting itself, constitute a depredation of property"). Given the Supreme Court's definition of depredation in *Deal*, any conduct which qualifies as a

depredation under § 1361 will, like the head severing in *Rebich*, necessarily involve a use of physical force sufficient to satisfy § 3156(a)(4)(A).

Accordingly, the depredation prong under § 1361 requires the use of force and therefore qualifies as a crime of violence.

## CONCLUSION

For the reasons stated above, there is probable cause to believe the defendant violated § 1361—an enumerated offense under § 2332b(g)(5)(B) punishable by ten or more years—that triggers a rebuttable presumption under § 2332b(g)(5)(B) and thus necessitates a detention hearing. But even if that were not the case, a detention hearing would still be warranted under § 3142(f)(A) because, in addition to being an offense listed under § 2332b(g)(5)(B), § 1361 is a "crime of violence" since causing "willful injury" or "depredation" to property necessarily requires the use of force.

Respectfully submitted,

MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY

_____
AHMED M. BASET
Assistant United States Attorney
IL Bar No. 630-4552
Kathryn L. Rakoczy
Jeffrey S. Nestler
Troy A. Edwards, Jr.
Louis J. Manzo
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530

                    /s/
_____
Justin Sher
Alexandra Hughes
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

**CERTIFICATE OF SERVICE**

    I hereby certify that on February 25, 2021, I sent a copy of the foregoing via the Court's electronic filing system to Michelle Peterson, Esq., counsel for the defendant.

AHMED M. BASET
Assistant United States Attorney