## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | No.    **1:21-cr-28 (APM)** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **JESSICA WATKINS** | ) | |

### GOVERNMENT'S OPPOSITION TO
### DEFENDANT'S MOTION TO RECONSIDER DETENTION

On February 26, 2021, this Court ordered defendant Jessica Watkins detained pending trial. In determining that no release condition or combination of release conditions could reasonably assure the community's safety, this Court noted that Watkins's conduct "seems to have shown a singular-minded focus on ensuring that what happened on January 6th would be disrupted and that Congress would not be able to peacefully transition power to a new Administration or to a new President." (2/26/21 Det. Hrg. Tr. at 79, ln. 4-8). On March 18, the defendant moved this Court to reconsider its decision. Because the defendant does not adduce any information or evidence to justify disturbing this Court's original decision, or that otherwise rebuts the presumption in favor of detention, the motion should be denied.[1]

---

[1] Although Watkins characterizes her pleading as a "Motion for Reconsideration of Detention Order," it appears that her request is actually to "reopen[]" the detention hearing under § 3142(f)(2)(B). This requires her to identify information (1) unknown to her at the time of the prior hearing that (2) has a material bearing on the detention question. *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020). "New and material information . . . consists of something other than a defendant's own evaluation of his character or the strength of the case against him"; instead, it must consist of 'truly changed circumstances, something unexpected, or a significant event.' " *Id*. at \*4, quoting *United States v. Esposito*, 354 f. Supp. 3d 354, 359 (S.D.N.Y. 2019). Moreover, "previously unavailable information has *no* material bearing on the factors that must be considered to establish the propriety of pretrial detention *unless* that new information casts different light on any of those [§ 3142(g)] factors." *Id*.

## ARGUMENT

There is no new or material information that casts the defendant in any less dangerous of a light than when this Court decided to detain her approximately one month ago. The information advanced by the defendant to support her motion does nothing to undermine her extremist and violent views regarding how to address what she believed to be a fraudulent election. Nor does it undo evidence of her persistent efforts to recruit and train like-minded individuals to get them "fighting fit" in time for the Inauguration. Likewise, evidence that the defendant had operational knowledge of a Quick Reaction Force (QRF) staging outside of the District in November 2020 and January 2021, as well as her corrupt motivations for storming the Capitol with nearly a dozen other now indicted co-conspirators from the "stack," remains unrefuted. And, contrary to her assertion that she was never engaged in violence (at 7), recently disclosed video from inside of the Capitol shows the defendant commanding a violent mob to "push, push, push, push" past riot control officers trying to block their advancement. Simply put, none of the supposed "new" information allays a central concern expressed by this Court that the defendant remains a danger to the community given her "single-minded focus" to undermine the transition of presidential power.

The defendant's primary argument is that a recently discovered Signal chat does not contain evidence of a conspiracy to stop the Electoral College certification. Not so—it contains substantial evidence of such an effort, along with additional evidence of the defendant's dangerousness beyond what was presented at the prior hearing. The chat, titled "DC OP: Jan 6 21," shows that the participants were activating a plan to use force on January 6. Participants were limited to Oath Keepers leaders, including Watkins, Kelly Meggs, Roberto Minuta[2], Joshua James[3], and Person One. Prior to the operation, they discussed topics such as what kind of

---

[2] Minuta has been charged by way of complaint in Criminal Case No. 21-mj-260.
[3] James has been charged by way of complaint in Criminal Case No. 21-mj-284.

weapons to bring, using handheld radios to communicate during the January 6 operation and, according to Person One, the existence of "several well equipped QRFs outside DC . . . [a]nd [] many, many others, from other groups, who will be watching and waiting on the outside in case of worst case scenarios."  Soon after 1:00 p.m. on January 6, around the time of the first reported breach of the Capitol building, Person One messaged the group participants that, "Pence is doing nothing. As I predicted."  Ten minutes later, Person One messaged, "All I see Trump doing is complaining. I see no intent by him to do anything. So the patriots are taking it into their own hands. They've had enough."  At around 2:15 p.m., a participant in the Signal chat informed the group that, "the have taken ground at the capital," and that, "We need to regroup any members who are not on mission."

Critically, after these messages, at around 2:32 p.m., Person One exchanged a 97 second call with "stack" member and Florida Oath Keepers leader, Kelly Meggs, as, Meggs, Watkins, and the rest of the stack embedded themselves among insurgents trying to force open the east side Capitol building double doors that officers were desperately trying to keep shut.  While waiting for the doors to open, scores of rioters surrounded and assaulted law enforcement officers who were attempting to prohibit entry. Video captures the officers trying everything in their power to stop the rioters.[4] As the mob continued to force their way forward—"[l]ike Rugby," as the defendant put it—bellowed chants of "Take their shields," "Our house," and "We want Trump!" can be heard.  All the while, rioters fired pepper spray at the officers (which strikes the Capitol doors), beat the officers with their own shields and weaponized flagpoles, and fired numerous projectiles at the officers and the doors.  The crowd also violently yanks on the doors.  The defendant and her group are positioned a few rows of rioters back from the doors at this time.

---

[4] https://www.youtube.com/watch?app=desktop&v=MVullQb-Lec (Oath Keeper stack visible at 4:10) (last viewed March 24, 2021).

At 2:38 p.m., an individual messaged the Signal chat participants, "QRF standing by at hotel. Just say the word …"  Minutes later, Person One posted a photograph showing the southeast side of the Capitol with the caption, "South side of US Capitol.  Patriots pounding on doors[.]" At around that time, the conspirators, including the defendant, and co-defendant Kelly Meggs—who was positioned at the front of the stack—forcibly entered the Capitol in stack formation by pushing past just opened and severely damaged Capitol building doors.  As this occurs, a woman is heard shouting over a blaring alarm, "We did it!"

Contrary to the defendant's claim that "[t]he government's evidence is at best that they were prepared to defend themselves against violence" (at 7), recently disclosed video evidence shows her acting aggressively toward riot control officers who are attempting to protect the building and its hidden occupants. In a 3:26 minute video[5], the defendant and other co-conspirators are observed trying to push forward past a line of officers trying to stop rioters from going down a hallway leading down the Senate side of the Capitol. In another video[6], recorded closer to Watkins but from a different vantage, she is seen jostling forward while a voice that sounds like the defendant's commands the people in front of her to "push, push, push," and to "get in there, get in there," before encouraging, "they [the police] can't hold us." Soon after, the defendant and the crowd are forced to disperse when officers deploy a chemical irritant into the crowd. The defendant described the violent encounter with officers in a subsequent Parler post: "Yeah. We stormed the Capitol today. Teargassed, the whole 9. Pushed our way into the Rotunda. Made it into the Senate even. The news is lying (even Fox) about the Historic Events we created today."

Around this time, Person One posted in the Signal chat a photo of people at the Capitol building with the caption, "Trump better do his damn duty."  Others discussed the movements of

---

[5] https://www.liveleak.com/view?t=9ZobJ_1610107203 (last viewed March 24, 2021).
[6] https://twitter.com/trbrtc/status/1373032386720636928?s=20 (last viewed March 24, 2021)

riot control officers being deployed to the Capitol.  One participant on the chat stated, "SWAAT should stand down and abide by their oath," while another commented, "Hopefully anyone inside the capitol is barricading themselves in and continually reinforce their positions for the long haul." At around 4:00 p.m., a large group—including the defendant, co-defendants Kelly and Connie Meggs, Graydon Young, Laura Steele, other members of the stack, and other individuals wearing "Oath Keepers" clothing and insignia who stormed the Capitol—gathered immediately outside of the Capitol.  Some stood near Person One and waited for at least several minutes at that location. At 4:10 p.m., a participant in the Signal chat stated, "Fight the good fight. Stand your ground."

At 5:50 p.m., Person One sent a message to the Signal chat participants, stating, "Leaders check to be sure you have all your team members.  If anyone is missing, post here."  Around that time, Watkins sent the following message to participants in the Signal chat: "We were in there. Flashbangs, teargassed us.  We are taking our senior citizen members back to the hotel now."  Later that evening, at 7:41 p.m., Person One sent the following Signal chat message:

> The founding generation Sons of Liberty stormed the mansion of the corrupt Royal Governor of Massachusetts, and trashed the place.  They also jumped on board a ship carrying East India Tea, and dumped it in the harbor.  We are actually in a far more deadly situation given the FACT that enemies foreign and domestic have subverted, infiltrated, and taken over near every single office and level of power in this nation.  We have one FINAL chance to get Trump to do his job and his duty. Patriots entering their own Capitol to send a message to the traitors is NOTHING compared to what's coming if Trump doesn't take decisive action right now.  It helped to send that message to HIM.  He was the most important audience today. I hope he got the message.

The next morning, at about 7:34 a.m., James messaged the Signal chat participants, "Trump conceded…its over.  We lose."

Watkins characterizes the Signal chat as containing "no evidence of any plan to stop the election, stop the certification process, or to impede Congress" (at 4).  But as this Court noted in the March 24, 2021, detention hearing for co-defendant Laura Steele, a conspiracy does not require

that the objective be planned days or months before and can even crystalize in the antecedent moments before final execution.  Moreover, the Signal chat evidence further supports rather than weakens the government's theory that the defendant and her co-conspirators breached the Capitol with the shared objective of using force to upend the transition of presidential power, or "stop[ping] the steal." On the afternoon of January 6, this meant suppressing certification of the Electoral College vote by physically taking over the building in which it was to take place.  Whether the defendant or her co-conspirators fully planned the manner and means by which that occurred months, hours, or minutes before the actual breach has no bearing on her potential for future danger and, accordingly, is not "new" let alone "material" evidence that warrants re-opening the detention hearing.

Other arguments posed by the defendant in her motion were already considered and rejected at the detention hearing.  As argued in the motion, the defense also argued at the prior hearing that the door damage occurred before they arrived (Tr. at 53-54, ln. 25, 1),[7] that her intent on January 6 was only to provide security at the rally (Tr. at 75, ln. 8-12), and to defend against Antifa and Black Lives Matter counter-protestors seeking to cause violence (Tr. at 50, ln. 1-13). That the defendant now attempts to draw distinctions with other Capitol Riot defendants who were

---

[7] Additionally, as detailed in the government's opposition to Defendant Crowl's motion to reconsider his detention status (ECF 103 at 19-21), the government disclosed to the defense that *window panes* of the doors through which the defendants forced entry to the Capitol appear to have sustained most if not all of their damage about twenty minutes prior to Watkins' entry, but the doors also sustained more than $1,000 of damage to each of: a bronze door handle that was broken off one of the doors, a door closer on one of the doors, and parts of the door and surrounding façade that were stained by chemical substance(s).  While the precise causes of those aspects of damage are still under investigation, it appears likely that the violent yanking on the doors and the spraying of chemical irritants committed by the mob that Watkins and her group participated in and aided and abetted in the 2:30-2:40 p.m. period would have contributed to this damage.  The government is also investigating additional damage inflicted by the mob inside the Capitol, to include damage to the marble and artwork inside the hallway off the Rotunda, where officers deployed chemical spray to repel Watkins and the mob that were trying force their way deeper into the Senate Wing.

released (at 8-12) was also an argument advanced at the hearing (Tr. at 54-57), and hardly constitutes the type of "new" and "material" information that justifies re-opening the detention hearing under § 3142(f)(2)(B).  Besides, none of those defendants led a local militia, actively recruited new members, planned to train those members to get "fighting fit" for the Inauguration, organized post-election "operations" in Washington, D.C. with national militia leaders, and violently stormed the Capitol dressed and equipped for war.

Finally, the defendant points to a change in living arrangements that, if released, would mitigate the risk of danger to the community (at 3).  However, arranging to live with her parents rather than her fiancé above her bar does not qualify as "truly changed circumstances." The "single-minded" focus with which the defendant engaged in this conspiracy, and the dangerous nature and circumstances of the offense itself—committed as a "federal crime of terrorism" under § 2332(b)(g)(5)(A) and a "crime of violence" under § 3156(a)(4)—remain acute concerns in a new world without her cherished firearms, her professional livelihood (the Jolly Roger bar), her personal hobby (leader of the Ohio Regulars militia), and that is now governed by a regime that she *actually* used violence against in order to preserve something as fundamental as her way of life.

## CONCLUSION

For all these reasons, the defendant has failed to produce any new or material information that qualifies as "truly changed circumstances, something unexpected, or a significant event," and, instead, points to information that further underscores the audacious and corrupt nature of the conspiracy that she and her co-conspirators engaged in.  The motion to reconsider her detention decision should thus be denied.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

By:

AHMED M. BASET
Assistant United States Attorney
IL Bar No. 630-4552
Troy A. Edwards, Jr.
Kathryn Rakoczy
Jeffrey S. Nestler
Louis Manzo (on detail)
Assistant United States Attorneys
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C. 20530


/s/ Alexandra Hughes
Alexandra Hughes
Justin Sher
Trial Attorneys
National Security Division
United States Department of Justice
950 Pennsylvania Avenue
NW Washington, D.C. 20004